IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOSEPH LEE, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> EMPOCC LLC, *et al.*, <br><br>  Defendants. | Case No. 1:25-cv-00131-DHU-SCY |

**JOINT MOTION FOR APPROVAL OF FLSA AND NMMWA SETTLEMENT**

Named Plaintiff Joseph Lee and Defendant EMPOCC LLC (collectively, the "Parties"), by and through undersigned counsel, hereby submit this Joint Motion for Approval of FLSA and NMMWA Settlement. Subject to Court approval, the Parties have agreed to settle the claims of Named Plaintiff Joseph Lee, 7 Opt-In Plaintiffs, and 300 other "Settlement Class Members" (collectively, "Plaintiffs"), for $200,000. *See* Settlement Agreement § I, attached as Exhibit A. The proposed settlement ("Settlement" or "Agreement") resolves all claims in the above-captioned lawsuit alleging that Defendant EMPOCC LLC failed to comply with the Fair Labor Standards Act ("FLSA"), 29, U.S.C. § 201, *et seq.*, the New Mexico Minimum Wage Act ("NMMWA"), and New Mexico common law by denying Plaintiffs and Class Members proper compensation by requiring them to share tips with ineligible managers and supervisors. The Settlement satisfies all criteria for settlement approval. The Parties' Joint Motion is further supported by the Declaration of Sarah M. Block, attached as Exhibit B ("Block Decl.").

Accordingly, the Parties respectfully request that the Court approve (1) the Agreement attached hereto as Exhibit A, including the Agreement's "one-step" opt-in procedure whereby

1

Settlement Class Members opt-into the settlement by cashing their settlement checks, Agreement § 2, and (2) the Settlement Notice attached hereto as Exhibit C.

## I.  CASE BACKGROUND AND PROCEDURAL POSTURE

Plaintiff Lee filed his initial complaint on February 7, 2025, as well as an amended complaint on June 3, 2025, which corrected the spelling of now-dismissed Defendant Kane Oueis's name but made no other changes.[1] Dkts. 1, 19. Plaintiff alleged that Defendants EMPOCC, LLC and Oueis denied them proper compensation by requiring them to share tips with supervisors, unjustly enriching themselves under New Mexico common law, and in violation of the FLSA, 29 U.S.C. § 203(m)(2)(B), and NMMWA, NMSA 1978, § 50-4-22(C)(6). Dkt. 16 ¶¶ 47-66. In addition to Named Plaintiff Joseph Lee, seven other "budtenders" filed consent-to-sue forms with the court. Dkt. 10. Based on the payroll data provided by Defendant, there are 308 total Settlement Class Members (including Plaintiff Lee and the seven Opt-Ins). These individuals worked for one or more days as budtenders in New Mexico at one or more of Defendant's retail store locations between February 7, 2022 and September 26, 2025, participated in a mandatory tip pool, and were identified in payroll data provided by Defendant on June 2, 2025 and July 11, 2025.

On May 19, 2025, the Parties met and conferred pursuant to Fed. R. Civ. P. 26(f). There, the Parties discussed the possibility of early settlement, and agreed to seek referral to a settlement conference, Dkt. 20, which was ultimately scheduled for September 26, 2025, Dkt. 25. Prior to the settlement conference, the Parties worked in good faith to exchange relevant payroll and other information, with Defendant making two productions of payroll data on June 2, 2025 and July 11, 2025. From this data, Plaintiffs developed a damages model, which they used to provide a

---

[1] Because Defendant Kane Oueis was dismissed by joint stipulation, *see* Dkt. 31, this brief hereinafter refers only to the "Defendant" in the singular.

principled opening offer to Defendant prior to the September 26, 2025 settlement conference. Defendant responded with a counteroffer prior to the settlement conference based on its own analysis of the data and understanding of the facts and law.

The Parties were unable to reach an agreement at the September 26, 2025 settlement conference. Given their belief that they could reach a mutually acceptable agreement, however, the Parties requested that the Court allow them a meet and confer period to further discuss their respective damages models and attempt to narrow their areas of disagreement. The Court so ordered this request on September 26, 2025. Dkt. 28. The Parties subsequently exchanged further offers and counteroffers, as well as explanations of their positions, and reached an agreement-in-principle to settle Plaintiffs' claims for $200,000, which they notified the Court of on October 8, 2025. Dkt. 29. The Parties have continued to negotiate the specific terms of their Agreement and reduce it to writing. *See* Block Decl. ¶ 31. They now submit that written Agreement to the Court for approval.[2]

The Parties' Agreement resolves Plaintiffs' claims on an opt-*in* basis consistent with the requirements of Section 216(b) of the FLSA: each Settlement Class Member will be sent a check, and may opt into the litigation and, correspondingly, the settlement by cashing that check. Agreement § 2; *see also* Dkts. 1, 16 ¶¶ 34-38 (asserting opt-in collective action claims under FLSA and NMMWA). Plaintiffs sought neither class nor collective certification in this matter prior to settlement, instead receiving a list of all affected employees directly from Defendant so that the Parties could negotiate a settlement on a collective/class basis. Because the only Settlement Class Members who will be bound by the Agreement are those who affirmatively choose to be bound by

---

[2] Plaintiffs also contemporaneously submit a petition for attorneys' fees and expenses. Defendant does not oppose Plaintiffs' petition.

3

cashing their settlement check, there is no need here for preliminary approval of a settlement class, an objection period, or for any of the other procedures prescribed by Fed. R. Civ. P. 23. *See Daigle v. Turnco Enters., LLC.*, No. 22-CV-0652 SMV/GBW, 2022 WL 3139081, at *1, *2 & n.1 (D.N.M. Aug. 5, 2022) (approval of settlement under Rule 23 not necessary where plaintiff had alleged class claims in complaint, but class had neither been certified nor proposed to be certified for settlement, as here).

Instead, the Agreement is evaluated as an FLSA opt-in settlement—to the extent that judicial approval of this settlement is required at all. *See Fowler v. Medicine Man Techs., Inc.*, Civ. No. 23-640 WJ/SCY, 2024 WL 3498587, at *2 (D.N.M. July 18, 2024) (explaining that it is not settled in the Tenth Circuit "whether court approval is required for a settlement of claims under the FLSA" (citing *Cisneros v. EP Wrap-It Insulation, LLC*, No. 19-500, 2021 WL 2953117, at *2 (D.N.M. Jul. 14, 2021))); *Riley v. D. Loves Restaurants, LLC*, No. CV 20-1085 WJ/KK, 2021 WL 1310973, at *4 (D.N.M. Apr. 8, 2021) ("[T]he current legal landscape [regarding FLSA settlement approval] is this: judicial approval is not required for private settlements of claims brought under the FLSA, where the parties' agreement resolves bona fide disputes regarding the amount of hours worked or compensation due rather than waiving or releasing the employee's substantive rights under the Act."); *Daigle*, 2022 WL 3139081, at *2 (judicial review of FLSA settlement not necessary where, *inter alia*, agreement bound only those "who cash[ed] or otherwise negotiate[d] their settlement checks.").

Courts often approve FLSA "one-step" FLSA settlement agreements like the one proposed here, where eligible individuals receive notice and a settlement check, and can opt-into the settlement by cashing the check, or preserve their rights by doing nothing. *See, e.g.*, *Kis v. Covelli Enters., Inc.*, No. 4:18-CV-434, 2019 WL 3369124, at *17 (N.D. Ohio July 26, 2019); *Lazarin v.*

4

*Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *3 (N.D. Cal. July 11, 2013); *Slover v. HPM Corp.*, No. 4:18-CV-5180-RMP, 2020 WL 13701542, at *3 (E.D. Wash. Jan. 9, 2020); *Besic v. Byline Bank, Inc.*, No. 15 C 8003, 2015 WL 13763028, at *3 (N.D. Ill. Oct. 26, 2015); *Day v. NuCO2 Mgmt., LLC*, No. 1:18-CV-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018); *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 WL 5907869, at *3 (N.D. Cal. Oct. 11, 2016); *del Toro Lopez v. Uber Techs., Inc.*, No. 17-CV-06255-YGR, 2018 WL 5982506, at *25 (N.D. Cal. Nov. 14, 2018); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012); *Simmons v. The Standard Life Insurance Company of New York*, No. 7:21-cv-00243, Dkt. 39 (S.D.N.Y. Jan 7, 2022).

To the extent that judicial approval is required here, and where (as here) the Parties request judicial approval, "[t]his district court and many others . . . have taken the position that approval of a collective settlement under the FLSA is limited to determining that the parties have a bona fide dispute and that there is no apparent defect in the parties' negotiations." *Fowler*, 2024 WL 3498587, at *2. Here, the Parties have resolved a bona fide dispute over the amount of tips owed to Plaintiffs, if any, and their negotiations were conducted at arm's length, largely before Magistrate Judge Yarbrough during a settlement conference. As such, they respectfully request that their agreement be approved.

## II.     SETTLEMENT NEGOTIATIONS

Settlement negotiations were conducted at arm's length. Block Decl. ¶¶ 29-32. Once the Parties agreed to pursue settlement on a class-wide basis on May 19, 2025, Defendant produced relevant tip and earnings data for three, six-month periods on June 2 and July 11, 2025. Because Defendant did not maintain records of tips for the entire recovery period, Plaintiffs used the data produced to extrapolate damages going back to the date that each individual began working for

Defendant, through February 28, 2025—the date that Defendant stopped their tip-pooling policy. Plaintiffs used this date to assign settlement amount allocations to each Class Member as discussed more fully below. Block Decl. ¶ 33. When Plaintiffs submitted their settlement demand, they provided Defendant with their spreadsheets and calculation methodology. *Id.* ¶ 29.

The Parties subsequently participated in a settlement conference with Magistrate Judge Yarbrough, and thereafter, further exchanged communications regarding their settlement demands and methodologies. *Id.* ¶ 31-32. The Parties' negotiations were principled—each side constructed a damages model based off payroll and employment data, and the Parties communicated not only their offers, but the assumptions underlying their models, and their models' methodologies. *Id.* ¶ 30-32. The Parties vigorously contested many of these assumptions and methodologies, as well as related legal theories. Indeed, the Parties still are not in agreement on a number of these matters, but believe they have reached a settlement that reflects appropriate compromise in the best interests of all Parties and in light of the Parties' opposing legal positions. *Id.* ¶ 32, 36-39, 44. The Parties have reduced this settlement to writing in the form of the attached Agreement. *See* Ex. A.

### III. SUMMARY OF THE SETTLEMENT TERMS

#### A. The Settlement Fund

The Parties have agreed to settle the litigation for a total of $200,000.00. Pursuant to the terms outlined in the Agreement, within 7 days of the date the Court approves the Settlement Agreement, Defendant will deposit the Settlement Amount of $200,000.00 into a Qualified Settlement Fund ("QSF") established by the Settlement Administrator. Agreement § 8(c). This amount will include: $121,502.55 to be allocated to the Settlement Class Members as backpay and liquidated damages; $1,000.00 to be allocated to Named Plaintiff Joseph Lee as a service award;

$4,292.91 to be allocated as payroll taxes; up to $3,500.00 for settlement administration costs; $65,147.73 in attorneys' fees; and $4,556.81 in litigation expenses. *Id.* § 6(a)-(f).

Within ten (10) days of the funding of the QSF, the Settlement Administrator shall distribute the Settlement Payments to Settlement Class Members in accordance with the terms of the Agreement and Final Approval Order. Of the total amounts to be paid to each Settlement Class Member, $31,448.87 will be designated as backpay, and $90,053.68 will be designated as liquidated damages. *Id*. § IV(6)(f). Settlement Class Members will have 120 days to cash their settlement payment checks. *Id.* § IV(7)(a). 30 days after the end of the 120-day cashing period, the Settlement Administrator shall remit any funds remaining from uncashed checks to the Unclaimed Property Division of the New Mexico Department of Taxation & Revenue. *Id.* § IV(7)(c).

### B.  Settlement Class Members

For purposes of settlement only, the term "Settlement Class Members" means all persons who were employed by Defendant as Budtenders / Retail Sales Associates or members of the Inventory Team (or similar job titles) at any time since February 7, 2022, through September 26, 2025, who participated in a tip pool, and who were identified in the data provided by Defendant on June 2, 2025, and July 11, 2025. There are three hundred and eight (308) Settlement Class Members, including the Named Plaintiff and Opt-Ins, for whom Defendant provided payroll and employment data and who participated in a tip pool. *Id.* § I. "Opt-Ins" means the seven individuals other than Named Plaintiff Joseph Lee who filed consent forms and opted in to the litigation.

### C.  Release of Claims

With respect to a release of claims, the Parties have agreed to the following limited release:

> Settlement Class Members who negotiate their Settlement Checks shall fully, finally, and forever release, settle, compromise, relinquish, and discharge the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, losses, fines,

7

> liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action arising out of the facts or circumstances alleged in the Complaint while they worked for Oasis as Budtenders / Retail Sales Associates and/or members of the Inventory Team (or similar job titles) between the time period of February 7, 2022, through September 26, 2025. This includes claims for unreimbursed tips, minimum and overtime wages under federal, state, and local law, and claims related to the foregoing for liquidated, exemplary, or punitive damages, penalties, equitable relief, interest, and attorneys' fees or costs, whether asserted on an individual or on a class, collective, or representative basis. Named Plaintiff will release his claims as stated in this Section 3 regardless of whether he negotiates his Settlement Check. All other Settlement Class Members who do not negotiate their Settlement Checks will not release any claims.
>
> As used in this Settlement Agreement, the term "Released Parties" shall include (i) Defendant; (ii) any past or present parents, subsidiaries, affiliates, insurers, insurance policies, and benefit plans of Defendant; (iii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this sentence; and (iv) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this sentence.

*Id.* § IV(3)(a). All Settlement Class Members' settlement checks shall contain, on the back of the check, the following endorsement:

> *CONSENT TO JOIN AND RELEASE OF CLAIMS:*
> *By negotiating this check, I consent to join the Fair Labor Standards Act claims in the case Lee v. EMPOCC, LLC, Case No. 1:25-cv-00131-DHU-SCY (D.N.M.), and I agree to be bound by the Settlement Agreement and release of claims in that case.*

*Id.* § IV(3)(b). The release of claims language as well as the fact that by negotiating the settlement check the Class Member will be opting into the FLSA claims are both set forth in the Notice that will be sent to all Settlement Class Members. *See* Ex. C.

### D. Distribution Formula and Notice Procedure

As discussed below in Section III.F, Plaintiffs' Counsel will seek $65,147.73 in attorneys' fees and $4,556.81 in litigation expenses. Agreement § IV(6)(c); Block Decl. ¶ 40. The percentage of the fund fee sought is equal to 33 and ⅓ percent of the Settlement Amount. Block Decl. *Id.* The

8

Parties have agreed that $3,500.00 will be allocated to XPand Legal for settlement administration services. Agreement § IV(5). In addition, the Parties seek approval of a $1,000.00 Service Award for Named Plaintiff Joseph Lee. Agreement § IV(6)(b); Block Decl. ¶ 43.

After these amounts, as well as payroll taxes in the amount of $4,292.91, are deducted from the Settlement Amount, the remaining net funds ("Class Settlement Fund") will be allocated among the Settlement Class Members as described herein. Agreement § IV(6)(e). Plaintiffs' Counsel will be responsible for determining the amounts to be allocated to each Settlement Class Member, which will be based on a point system. Block Decl. ¶ 33. Specifically, as set forth in the proposed Notice, Ex. C, the settlement payments are based on each Settlement Class Member's number of days of employment as a budtender. Each Settlement Class Member was allocated 1 point for each day that he/she worked as a budtender. The total number of points were then divided into the Class Settlement Fund to determine the value of a point. The Settlement Payment to each Settlement Class Member is their number of points multiplied by the value of a point, although any Settlement Class Member whose settlement award based on this formula totals less than $25 will instead receive the minimum payment of $25. Block Decl. ¶ 33. After the payment of all fees, expenses, administrator fees and the service award, the average point value is $2.14 per day and the average Settlement Award is $394.49. *Id.*

Along with their settlement checks, all Settlement Class Members will be sent a court-approved Notice by U.S. Mail. Ex. A §§ IV(3)(b), (8)(d). The Settlement Administrator will run the Class Members' addresses through the National Change of Address database of the United States Post Office, conduct skip tracing, and use other available resources it deems suitable to locate missing Settlement Class Members. *Id.* IV(8)(e). The Notice and settlement checks will be sent within 10 days after Defendant funds the QSF. *Id.* § IV(9).

### E. Service Award to Named Plaintiff

Under the Agreement, a $1,000.00 service award will be made to Named Plaintiff Joseph Lee. *Id.* § IV(6)(b); Block Decl. ¶ 43. Named Plaintiff Lee came forward and assisted counsel with the factual investigation of the claims and subsequently filed this action on behalf of himself and all those similarly situated. Block Decl. *Id.* Additionally, he spent considerable time providing information to Plaintiffs' Counsel, participating in discussions related to settlement, and participating in the September 26, 2025, settlement conference. *Id.* He provided assistance to Plaintiffs' Counsel, explaining the Defendant's tip policies, budtenders' job duties, and the job duties of supervisors. *Id.*

"Courts have stated that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class." *Acevedo v. Southwest Airlines Co.,* No.1:16-cv-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) (citing *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed. Appx. 232, 235-36 (10th Cir. 2009)); *see also Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."). Notably, however, the "reasonableness of a service award to a named Plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement." *Thompson v. Qwest Corp.,* No.17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). As one federal court explained in awarding service payments to plaintiffs involved in filing and litigating an unpaid overtime claim, "[i]n a wages and hours case, where a

low-level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014).

Service awards are common in the Tenth Circuit, often in amounts exceeding $1,000.00 per plaintiff. *See, e.g.*, *Fowler v. Medicine Man Technologies, Inc., et al.*, 1:23cv640 (WJ-SCY) (D.N.M July 18, 22, 2024) (Dkts. 46 and 47) (Report and Recommendation and Order approving service award of $10,000.00 in budtender tip case); *In re Universal Service Fund Telephone Biling Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, *2 (D.N.M. May 12, 2011) (awarding $10,000 service award to named plaintiff).

In determining whether a service award is warranted, courts in the Tenth Circuit consider the following factors: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Lucken Family Ltd. P'ship, LLP v. Ultra Resources, Inc.*, No. 09-cv-1543, 2010 WL 5387559, at *6 (D. Colo. Dec. 220, 2010). Here, Named Plaintiff Joseph Lee has taken great steps to protect the interests of the Settlement Class and the Settlement Class members will significantly benefit from his actions. Mr. Lee put in substantial efforts to assist in litigating the case, and a Service Award is appropriate. Block Decl. ¶ 43.

### F. Attorneys' Fees and Expenses

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Likewise, the NMMWA provides for a mandatory award of reasonable attorneys' fees to be paid by the Defendant. N.M. Stat. § 50-4-26(E).

11

Consistent with the Agreement, Plaintiffs' Counsel files contemporaneously with this motion a petition for attorneys' fees in the amount of $65,147.73 and litigation expenses in the amount of $4,556.81 in this common fund settlement. The fee equals thirty-three and one-third percent (33 ⅓ %) of the Settlement Amount net of the $4,556.81 in litigation expenses. Agreement § IV(6)(c); *see, e.g.*, *Cisneros v. EP Wrap-It Insulation, LLC,* Civ. No. 19-500 GBW/GJF, 2021 WL 2953117, at *8 (D.N.M. Jul. 14, 2021) ("[T]he Court notes that the proposed fee of one-third of the total settlement is a standard contingent fee in class actions in this and other district courts in this circuit."); *Acevedo*, 2019 WL 6712298, at *4 (in FLSA and NMMWA case, holding attorneys' fee award of "33.33% of the gross recovery is reasonable and in line with similar awards"); *Lucken*, 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."). Pursuant to the terms of the Agreement, if the Court awards attorneys' fees in an amount less than the amount sought by the Plaintiffs, the difference between the amount awarded by the Court and the amount sought by Plaintiffs as attorneys' fees will be distributed to the Class. Agreement § IV(6)(c). Defendant does not oppose Plaintiffs' petition for attorneys' fees and expenses.

### G. Settlement Administration

The Parties have retained XPand Legal to act as the independent Settlement Administrator. *Id.* § IV(5)(b). XPand will be responsible for mailing Notices and Settlement Payments to Settlement Class Members, opening and managing the QSF, issuing tax forms, and performing other tasks consistent with the Agreement. *Id.* XPand will be paid up to $3,500.00 from the Settlement Amount deposited into the QSF. *Id.*

### IV.   THE SETTLEMENT SHOULD BE APPROVED

#### A.  Legal Standards for Settlement Approval

Although it is not settled that court approval is necessary for an FLSA settlement in this circuit, the Parties move for approval of this opt-in settlement. *See Fowler*, 2024 WL 3498587, at *2. In the District of New Mexico, FLSA settlements are reviewed only to determine "that the parties have a bona fide dispute and that there is no apparent defect in the parties' negotiations." *Id.*; *Cisneros*, 2021 WL 2953117, at *2. This settlement meets that standard.

#### B.  The Parties Have Resolved a Bona Fide Dispute

The Settlement Agreement here resolves Plaintiffs' claims that Defendant improperly required them to participate in a tip pool alongside management employees. It is not merely a "waiv[er] or releas[e] of [Plaintiffs'] substantive rights under the[se] [statutes]." *Riley*, 2021 WL 1310973, at *4. Rather, the Settlement Agreement resolves a real dispute regarding the propriety of these tip pools, the job duties of the participants in those tip pools, and the amount of back-tips and liquidated damages allegedly owed to Plaintiffs as the result of a discrete violation of the FLSA and NMMWA. As such, it should be approved. *See Riley*, 2021 WL 1310973, at *3 (explaining that agreement sufficient where "plaintiffs [a]re represented by competent counsel and . . . the settlement at issue compromise[s] bona fide disputes regarding whether and how often the plaintiffs were undercompensated." (citing *Serna v. Bd. of Cnty. Commissioners of Rio Arriba Cnty.*, No. 17-CV-196-RB-KBM, 2018 WL 4773361, at *4 (D.N.M. Oct. 3, 2018)).

##### 1.  *The Settlement Agreement is a Compromise of Contested Factual and Legal Disputes*

The settlement here "provides substantial monetary payments to the class members and enables them to avoid real litigation risks." *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*,

No. 19-940 GJF, 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021). Plaintiffs faced some risk that NM Stat. § 50-4-22(C)(6), which requires that tips earned by employees must be retained by employees, may apply only to employees who earn less than the minimum wage. The budtenders here earn a direct wage equal to or greater than the minimum wage. Similarly, Plaintiffs faced some minimal risk that the double damages penalty under NM Stat. § 50-4-26(C) would not apply to tips because that provision states that employers who violate any provision Section 50-4-22 NMSA 1978 "shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages." Defendant argued that tips are not considered minimum wages and as such, the treble damages provision of the statute would not apply. Defendant also argued that Plaintiffs are not "wait staff" under NM Stat. § 50-4-22(C)(6), and thus not entitled to the tip pooling protections of that law. Block Decl. ¶ 36.

Plaintiffs also faced some risk that budtenders' supervisors—and Assistant Managers in particular—do not perform sufficient duties to qualify for the applicable prongs of the executive exemption to the FLSA, and thus could be found to be entitled to participate in the tip pool alongside Plaintiffs under the FLSA. *Id.* ¶¶ 36-39. Plaintiffs also faced some risk at the class certification stage. Plaintiffs' investigation yielded some potential variation in the job duties of Assistant Managers across Defendant's locations, along with other differences in staffing and recordkeeping that could have frustrated class certification. *Id.* ¶ 37.

Moreover, absent settlement, the Parties would need to engage in substantial discovery, class certification briefing, summary judgment briefing and, eventually, trial. *Id.* ¶ 36. It is also likely that both sides would seek to appeal any unfavorable judgment, particularly given this relatively untested area of the law. *Id.* To continue to litigate this case would be very costly, whereas

14

settlement now provides the Settlement Class Members with a substantial portion of the relief to which they would be entitled on their very best day in court. *Id.* ¶ 38.

Accordingly, "[g]iven that outstanding questions of law and fact place the ultimate outcome of this matter in doubt, and considering the amount of potentially recoverable damages, the value of the . . . settlement outweighs the mere possibility of future relief after protracted and expensive litigation." *Montgomery*, 2021 WL 1339305, at *5.

Moreover, the Parties' settlement negotiations "were conducted in a manner that would protect and further the class interests." *Montgomery,* 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes). The Parties engaged in a contested mediation overseen by Magistrate Judge Yarbrough. Block Decl. ¶ 31. Moreover, the Parties exchanged offers and positions before, during, and after this mediation based on principled damages models, developed from Defendant's payroll data. *Id.* ¶¶ 29-30. This culminated in an agreement that is fair and reasonable and the product of arm's length negotiations. *Id.* ¶ 29, 39. *See Key v. Butch's Rate Hole & Anchor Serv., Inc.*, No. CIV 17-1171 RB/KRB, 2022 WL 457915, at *2 (D.N.M. Feb. 15, 2022) (finding that mediation and parties' use of a damages model indicated that the settlement process was "open, fair and honest").

### 2. *Plaintiffs' Counsel and the Named Plaintiff Have Adequately Represented the Settlement Class*

Both Parties were represented by experienced counsel who believe that the settlement is fair and reasonable. "Counsel's judgment as to the fairness of the agreement is entitled to significant weight." *Anderson Living Trust,* CV No. 13 909 WJ/CG, 2021 WL 3076910, at *6 (D.N.M. Jul. 21, 2021) (quoting *Lucas,* 234 F.R.D. at 695) (internal quotation marks omitted). Plaintiffs' Counsel has substantial experience litigating wage and hour class and collective actions. Block Decl. ¶¶ 1-23. Given the risks of continuing to litigate the case and based on Counsel's

15

professional experience, the Parties believe that the settlement is fair, reasonable, and adequate. Block Decl. ¶ 39. The settlement will provide significant relief to all Settlement Class Members and should be considered an outstanding result. *Id.*

Moreover, Plaintiffs' Counsel achieved a positive result for the Settlement Class, when considering "the actual performance of counsel acting on behalf of the class." *Montgomery,* 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). Plaintiffs' Counsel have "substantial experience litigating wage and hour cases" and "were able to draw on their prior experience in similar litigation to achieve a manifestly favorable settlement." *Id.*; *see* Block Decl. ¶¶ 1-23. As such, Plaintiffs' Counsel have adequately represented the Settlement Class, particularly as the Agreement provides outstanding relief for the Settlement Class. One way to look at the Settlement Class's recovery is that even after attorneys' fees, litigation expenses, settlement administration costs, the service award, and payroll taxes, the Settlement Class is still recovering over $121,000.00 in a case involving claims for the redistribution of tips, Block Decl. ¶ 44, despite the risks faced by Plaintiffs and the Settlement Class. Block Decl. ¶¶ 36-39.

## V.    THE COURT SHOULD APPROVE THE SETTLEMENT NOTICE

The Notice here will allow Settlement Class Members to opt *into* a settlement, rather than *out*—meaning that Settlement Class Members' rights will not be compromised absent action on their part. *Compare* Fed. R. Civ. P. 23(e)(1) (explaining that the Court must "direct notice in a reasonable manner to all class members who *would be bound*" by a settlement) (emphasis added). As such, the standard by which the notice should be evaluated here is lighter. Nevertheless, here, "individual notice [will] be sent to all class members whose names and addresses may be ascertained through reasonable effort," in that notice will be sent to everyone that Defendant's

16

records show worked as a budtender during the relevant period. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). "The hallmark of the notice inquiry . . . is reasonableness." *Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417, 436 (D.N.M. 1988).

The attached Notice is the best practicable notice as it is clear, thorough, and reasonably calculated to apprise all Settlement Class Members of the settlement and affords them the opportunity to opt-in and participate in that settlement by simply cashing their check, or preserve their rights by doing nothing. Notice, Ex. C. Importantly, the Notice also: explains how the Settlement Amount will be allocated and sets forth the amount of fees, expenses, service payments, payroll taxes, and settlement administration costs that will be paid out of the Settlement Amount. *Id.* Further, the Notice will be sent by U.S. Mail, with the Settlement Administrator performing skip-trace searches in the event of returned mailings. Agreement § IV(8)(e). Accordingly, approval of the Notice is warranted.

## VI.    CONCLUSION

For the reasons set forth above, and for the reasons set forth in Plaintiffs' contemporaneously filed Petition for Attorneys' Fees and Litigation Expenses, the Parties respectfully request that the Court:

(1) Conclude that a bona fide legal dispute between the Parties as to whether Settlement Class Members are owed any wages, redistributed tips, or statutory damages exists;

(2) Grant approval of the Settlement Agreement as fair, reasonable, and adequate;

(3) Approve the "one-step" opt-in procedure provided by § IV(2) of the Settlement Agreement, such that the Agreement is binding on all Settlement Class Members who opt-in by cashing their settlement checks;

(4) Approve the form and substance of the Notice provided for by Sections IV(3)(b) and IV(8)(d) of the Settlement Agreement, and direct its mailing, along with settlement checks;

(5) Approve the procedure for Defendant to pay the Settlement Amount into the QSF as described in Section IV(8)(c) of the Agreement;

(6) Approve an award of attorneys' fees in the amount of $65,147.73 and litigation expenses equaling $4,556.81, Ex. A § IV(6)(c), and as supported by Plaintiffs' contemporaneous, Petition for Attorneys' Fees and Litigation Expenses;

(7) Approve the Service Award to Named Plaintiff Joseph Lee as set forth in Section IV(6)(b) of the Agreement;

(8) Approve payment of settlement administration costs to the Settlement Administrator in an amount not to exceed $3,500.00, as set forth in Section IV(6)(d) of the Agreement;

(9) Incorporate the terms of the Settlement Agreement into the Court's Order;

(10) Dismiss this matter with prejudice for all Settlement Class Members who opt-into the settlement by negotiating their settlement check;

(11) Enter judgment for Plaintiffs and against Defendant in the amount of $200,000.00, consisting of: $121,502.655 in backpay and liquidated damages; $1,000 in service awards for Named Plaintiff Joseph Lee; $4,292.91 in payroll taxes; $65,147.73 in attorneys' fees; and $4,556.81 in litigation expenses;

(12) Retain jurisdiction over the interpretation and implementation of the Settlement Agreement, Ex. A § V(8).

Dated: November 7, 2025

                                                  Respectfully submitted,

| | |
|---|---|
| */s/ Sarah M. Block* | */s/ A. Blair Dunn* |
| Molly A. Elkin (*admitted pro hac vice*) | A. Blair Dunn |
| Sarah M. Block (*admitted pro hac vice*) | Jared R. Vander Dussen |
| Patrick J. Miller-Bartley (*admitted pro hac vice*) | WESTERN AGRICULTURE, |
| McGILLIVARY STEELE ELKIN LLP | RESOURCE AND BUSINESS |
| 1101 Vermont Ave., NW | ADVOCATES, LLP |
| Suite 1000 | 400 Gold Ave. SW, Suite 1000 |
| Washington, DC 20005 | Albuquerque, NM 87102 |
| Telephone: (202) 833-8855 | Phone: (505) 750-3060 |
| Fax: (202) 452-1090 | abdunn@ablairdunn-esq.com |
| mae@mselaborlaw.com | warba.llp.jared@gmail.com |
| smb@mselaborlaw.com | |
| pmb@mselaborlaw.com | *Attorneys for Defendant* |

*/s/ Stephen Curtice*
Stephen Curtice
Youtz & Valdez PC
900 Gold Ave. SW
Albuquerque, NM 87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was delivered by electronic notification through the CM/ECF system to all parties of record this 7th day of November, 2025, including counsel for Defendant at:

> A. Blair Dunn
> Jared R. Vander Dussen
> WESTERN AGRICULTURE,
> RESOURCE AND BUSINESS
> ADVOCATES, LLP
> 400 Gold Ave. SW, Suite 1000
> Albuquerque, NM 87102
> Phone: (505) 750-3060
> abdunn@ablairdunn-esq.com
> warba.llp.jared@gmail.com

*/s/ Sarah M. Block*
Sarah M. Block